## CURTIS v. METCALF et al.

(District Court, D. Rhode Island. May 15, 1918.)

No. 70.

1. **Banks and banking** ⊜=254—**Bill by receiver to charge directors of national bank held insufficient.**

A bill by the receiver of a national bank, against persons who were directors at different times, charging liability with respect to many transactions, set out, covering several years, *held* too general, in the indiscriminate charging of various kinds of wrongdoing as applicable equally to all defendants.

2. **Banks and banking** ⊜=254—**Requirements stated of bill by receiver to charge national bank directors for losses from excessive loans.**

In a bill by a receiver against directors of a national bank to recover losses alleged to have been caused by loans to a single person in excess of the 10 per cent. limit imposed by Rev. St. § 5200, as amended (Comp. St. § 9761), it is material that it be shown whether the indebtedness was

created by direct borrowing, or by discount of commercial paper on which the debtor was liable only as indorser, and also that the statute was knowingly violated, to create liability under Rev. St. § 5239 (Comp. St. § 9831).

**3. Pleading ⊜48—Charges must not extend beyond intended proof.**

No mode of pleading is just to a defendant, which charges him with more than is intended to be proved against him.

**4. Banks and banking ⊜254—Requisites stated of bill to charge national bank directors for failure to collect debts.**

A bill to charge a director of a national bank with losses from failure to collect debts due the bank should allege possession by the particular debtor of assets from which collection could have been made at the time of the alleged negligence.

**5. Banks and banking ⊜254—Bill to charge directors of national bank should state nature of liability.**

In a suit by the receiver of a national bank against a number of defendants, who were directors at different times, to recover losses alleged to have resulted from making loans in excess of the statutory limit, and also from negligence in making improvident loans and renewals and failing to collect, each defendant is entitled to be informed as to the extent of the charge of liability against him with respect to each transaction set out, and whether the liability claimed is under the statute or at common law.

**6. Banks and banking ⊜254—Bill to charge directors of national bank for excessive loans should show extent of liability.**

A bill to charge a director of a national bank, under Rev. St. § 5239 (Comp. St. § 9831), with liability for losses upon loans exceeding the limit fixed by Rev. St. § 5200 (Comp. St. § 9761), should show clearly whether defendant is charged with liability for the whole loan, or only for the excess.

**7. Banks and banking ⊜254—In suit against bank directors, not necessary to join all directors.**

In a suit by the receiver of a national bank against former directors to charge them with personal liability for alleged illegal acts, it is not necessary that all persons who were directors during the time should be joined as defendants.

In Equity. Suit by Rensselaer L. Curtis, receiver of the Atlantic National Bank, against Edward P. Metcalf and others. On defendants' motions to strike out and to dismiss. Sustained in part, with leave to amend bill.

See, also, 259 Fed. 961.

Mumford, Huddy & Emerson, of Providence, R. I., for complainant.
Green, Hinkley & Allen, of Providence, R. I., for defendant Smith.
Tillinghast & Lynch, of Providence, R. I., for defendant Boyden.
Waterman & Greenlaw, of Providence, R. I., for defendant Chase.
Fitzgerald & Higgins, of Providence, R. I., for defendant Sullivan.
Gardner, Pirce & Thornley, of Providence, R. I., for defendants Jones, Wellman, Dean, Sherwood, Houlihan, Conley, Harvey, and Whipple.
Murdock & Tillinghast and Percy W. Gardner, all of Providence, R. I., for defendants Dennis and Eddy.
Edward A. Stockwell, of Providence, R. I., for defendant Swanson.
Edwards & Angell, of Providence, R. I., for defendant Fletcher.
Barney, Lee & McCanna, of Providence, R. I., for defendant Tinkham.

---

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

BROWN, District Judge. The bill of complaint by the receiver of the Atlantic National Bank of Providence, R. I., against 21 former directors and the administrators of James S. Kenyon, a deceased director, prays an accounting for losses sustained by said bank, and that each of said respondents be required to pay to the receiver, "so much of said loss as the said respondent is liable for upon the facts set forth in this bill of complaint."

By motions to dismiss and to strike out, the defendants, respectively, make many objections to the bill, which charges violations of the National Bank Act (Act June 3, 1864, c. 106, 13 Stat. 99), and also violations of the common-law duties of directors.

As questions of the latter kind were pending before the Circuit Court of Appeals for the First Circuit in Dresser v. Bates, Receiver, 250 Fed. 525, 162 C. C. A. 541, decided March 5, 1918, it seemed desirable to defer a consideration of this case until a decision by that court.

[1] The present bill, filed August 3, 1916, covers a period from June 15, 1906, to April 12. 1913, the date of the close of the bank's business. As it covers so long a period and relates to so many transactions, the complainant naturally has sought to frame general allegations applicable to many persons and to many transactions. On the other hand, apparently out of excessive caution, he has set forth in great detail particular items of loans to a large number of borrowers.

As the different defendants were directors during different periods of time, and as they are charged, not only with making loans to persons not entitled to credit, and loans which exceeded the statutory limit of 10 per cent., but also with improper renewals of former loans, and with neglect to use due diligence in realizing upon former loans, and to enforce the statutory liability of former directors, the various transactions are so bound together by the general allegations of the bill that it is practically impossible for many of the defendants to determine the particular losses with which the bill seeks to charge them, or the special grounds of liability applicable to each loss.

Furthermore, it is objected that paragraph 20, which sets out in 150 printed pages the various transactions, does not disclose the nature of the obligations of the so-called "borrowers"—whether it is as direct borrowers or as indorsers.

[2] Though the plaintiff contends that it is not material whether the "borrower" executed a note as maker or indorser, it would seem quite material in respect to the charge of a violation of the statute by a loan in excess of the statutory 10 per cent. (Rev. Stats. § 5200, as amended [Comp. St. § 9761]), that it should appear whether or not the defendants are charged in paragraph 20 by reason of the indorsement or discount of commercial or business paper, or by reason of direct borrowing. The heading "others liable" is equivocal, and does not show whether they are liable as makers or indorsers; a difference which may be quite material in the preparation of a defense to a charge of the violation of the statute as well as to a charge of making a bad loan, the defense to which might involve questions of fact as to the apparent financial ability of either maker or indorser, or of both.

Paragraph 16 sets up eight distinct grounds of liability—six kinds of acts of misfeasance, and two kinds of nonfeasance. Some are violations of statute law; others violations of common-law duty. This is in terms a general charge against all defendants, though by reading it in connection with paragraph 10, which sets forth the period of time when the defendants were respectively in office, and also with paragraphs 18, 19, 20, and 21, and with the prayer of the bill, it is apparent that all defendants are not charged with liability upon the same transactions nor to the same extent.

While some limitation of the charges against a particular defendant may be worked out by a proper construction of the bill, I am of the opinion that, as framed, the bill imposes upon the defendants the burden of making classifications and separations which should properly be made by the plaintiff.

[3] No mode of pleading is just to a defendant which charges him with more than is intended to be proved against him.

While it is proper to charge a defendant with several grounds of liability for a particular loss, it is evident that a charge of making a bad loan is inapplicable to one who found such a loan in the bank when he became a director, and that a renewal of such a loan may or may not be a cause of loss, or amount to actionable negligence, according to the circumstances at the time of renewal. If the money of a bank be misapplied by paying it out on worthless paper, it is obvious that a subsequent renewal of such paper, upon which nothing was actually obtained, could not have misapplied the money of the bank. Coffin v. U. S., 162 U. S. 677, 16 Sup. Ct. 943, 40 L. Ed. 1109.

It also seems insufficient to charge in general terms, as in paragraph 37, that a large part or the whole of said loss might have been saved by action with reasonable promptness.

[4] A defendant is entitled to be particularly informed of what losses on old accounts are charged to him by reason of his inaction or negligence; and the bill, in order to show that such loss resulted from his negligence, should allege the possession by the particular debtor, at the time of the alleged negligence, of assets which could have been realized for the bank by prompt action taken at that time.

Furthermore, the defendants are charged with violations of the National Bank Act in making loans for a sum in excess of one-tenth part of the unimpaired capital stock and unimpaired surplus fund of the bank, called excessive loans. R. S. § 5200. The liability for such violation is fixed by R. S. § 5239 (Comp. St. § 9831), and applies only to such directors as knowingly violated the act and participated in or assented to the violation, and gives damages "sustained in consequence of such violation." The limitation of the amount of a loan to a single person is imposed by statute, and the measure of responsibility for violation of that provision is exclusively governed by section 5239, which requires proof of something more than negligence; i. e., that the violation must be in effect intentional. Yates v. Jones Nat. Bank, 206 U. S. 158, 27 Sup. Ct. 638, 51 L. Ed. 1002; Chesbrough v. Woodworth, 244 U. S. 72, 78, 37 Sup. Ct. 579, 61 L. Ed. 1000.

This raises questions of the liability of directors for conduct gov-

erned by the federal act for which Congress did not make negligence the test of liability. Jones Nat. Bank v. Yates, 240 U. S. 541, 550, 555, 36 Sup. Ct. 429, 60 L. Ed. 788.

[5] I am of the opinion that each defendant is entitled to be informed as to the extent of the charge of liability under the statute for loans in excess of 10 per cent., so that it will appear whether he is charged for the entire amount of the loans to a particular borrower, or only for the amount by which said loans exceeded the statutory limit, and so that he may raise an issue as to his liability under the statute distinct from the issue as to his liability upon grounds other than those fixed by statute. Though section 5239 furnishes the exclusive rule applicable to a loss resulting solely from a violation of the Banking Act, it does not follow that a defendant may not be liable on common law principles for the entire amount of the aggregate loans to a borrower, including the excess over the statutory limit. Allen v. Luke (C. C.) 163 Fed. 1018, 1020; McCormick v. King, 241 Fed. 737, 743 et seq., 154 C. C. A. 439; Williams v. Brady (D. C.) 232 Fed. 740. But the two grounds of liability are distinct, and raise distinct issues of fact and law.

[6] It seems to have been held that the liability under section 5239 is applicable only to the amount of damages resulting from the excess of a borrower's obligations over the statutory limit, and is inapplicable to that portion of the gross indebtedness which did not exceed the specific limit. Witters v. Sowles (C. C.) 43 Fed. 405; Rankin v. Cooper (C. C.) 149 Fed. 1010, 1017; Stephens v. Overstolz (C. C.) 43 Fed. 771, 775. The bill should show clearly whether the defendant is charged with the whole loan or only with the excess.

As was said in Allen v. Luke (C. C.) 141 Fed. 694, 696, the defendants "are entitled to know the kind of alleged negligence upon which the complainant will rely. * * * The complainant must specify the action or inaction relied on." So, also, the defendants are entitled to know, respectively, which specific transactions are charged against them as violations of the statute involving liability under section 5239.

As a basis of the charges of statutory liability it will be necessary for the plaintiff to show the amount of the bank's unimpaired capital stock and unimpaired surplus fund from time to time, in order to determine if the total liabilities of any borrower exceed one-tenth part thereof. R. S. § 5200, as amended June 22, 1906 (Comp. Stats. 1916, § 9761). This is unnecessary to establish the charges of negligence and of liability upon common-law grounds.

As it is apparent that the grounds of liability involve different questions of fact—the statutory ground, the financial status of the bank; the common-law ground, the financial status or apparent credit of the borrower and indorsers—as well as questions of knowledge, actual or imputed, of these quite different things, it seems a practical necessity to so limit the charges against a particular defendant as to relieve him from attendance upon the taking of testimony upon issues which do not concern him.

In paragraph 8 there are allegations as to the time of total exhaustion of assets, and proof of complete exhaustion of assets at a par-

ticular date would render all subsequent loans of whatever amount excessive loans; for which, under R. S. § 5239, directors who knowingly violated section 5200 might be liable. But this paragraph does not cover the earlier period of the bill, and does not furnish a basis for determining which of the earlier loans were in excess of the statutory limit. This paragraph 8 begins with the clause:

"In consequence of the wrongful action and neglect of said respondents, as hereinafter set forth, the capital and surplus was impaired," etc.

This seems to introduce at this point an immaterial question. It is the fact of impairment, rather than the mode of impairment, which is material upon the question of excessive loans, and the liability for negligence must depend upon the subsequent charges. This clause should be stricken out as tending to introduce a false issue, and as superfluous in view of the reference "as hereinafter set forth."

Paragraph 8 should further be amended to show clearly at what time the capital and surplus had been reduced to such extent as to make particular loans excessive, and at what time so completely exhausted as to make excessive all loans thereafter. It is, of course, not necessary for the plaintiff to state the amount of capital and surplus on each day, but only to charge that particular loans were in excess of 10 per cent. of the then existing capital and surplus, and that particular defendants knowingly violated the statute in respect to such loans.

To determine the amount of the unimpaired capital and surplus of the bank from time to time, it will be necessary to send the case to a master, and it will probably be most convenient for the master to determine:

First. At what period of time the capital stock and surplus had been wholly exhausted; and

Second. At what times the impairment was such as to render excessive all loans over a certain amount.

The plaintiff, before the master, may charge this in general terms, and if the charge is denied it will probably be necessary for him to specify in detail what loans or credits he deducts to show exhaustion or depreciation of capital and surplus.

The plaintiff's brief in reply states:

"In the present case the facts which gave rise to the cause of action were not the loans appearing on the books, but the character of those loans—a character not apparent on the books because dependent upon the credit of the borrowers."

The bill charges also the payments of dividends in violation of section 5204, R. S. (Comp. St. § 9766).

"An investigation into the merits of this charge will necessarily involve a critical inquiry into the financial condition of the bank on each of said occasions," etc. Cockrill v. Cooper, 86 Fed. 7, 15, 29 C. C. A. 529.

It does not appear necessary that the plaintiff in his bill should set forth what loans depleted the capital, though it may become necessary for him to charge this before the master. Neither is it necessary to show that the depletion was caused by debts due on which

interest was past due and unpaid for a period of six months; the same not being well secured. It does not follow, because section 5204 makes these bad debts, that it makes all other debts good, or that debts which are otherwise bad are not to be deducted to determine the unimpaired capital and surplus.

Other objections require brief consideration.

[7] I am of the opinion that the objection for nonjoinder of other directors is not well taken, and that it is for the plaintiff to say which of the directors he will sue. If there is any right of contribution, which is very doubtful at least, that right will not be prejudiced by nonjoinder, and the plaintiff should not be compelled to join parties against whom he has found no cause of action, or whom he deems pecuniarily irresponsible.

Paragraph 14: Lines 6 to 14, inclusive, and words beginning "and that the liabilities" and ending with the word "association" on line 16, are mere surplusage, and should be stricken out.

Paragraph 15: This seems to be too general to be of use, and adds nothing to the bill. It should be stricken out or amended.

Paragraph 16 may stand as a general allegation, but should be supplemented by allegations defining the particular loans or loss of dividends charged to particular directors, and the special ground of liability of each director for each loan. This, of course, will permit of some grouping for the purpose of condensation; but that each defendant should be separately informed as to the matters in the bill charged against him is an indispensable requisite of pleading. He should not be compelled, at his own risk, to discriminate between the matters charged to him and matters charged to other directors, or between the grounds of liability applicable to him and those applicable only to others. This is a burden which the plaintiff must assume, and from which no liberality in the rules of pleading can excuse him, for this is matter of substance.

Paragraph 18 may stand, but should be supplemented. It should not be difficult for the plaintiff to state definitely which dividends have been wrongfully declared by particular directors, and which directors he seeks to charge with responsibility for loss due to a failure to recover the same, and the grounds of this liability.

Paragraphs 27 and 28 should be supplemented by a charge as to each director, stating the specific investment in stocks and bonds for which he is to be held responsible.

Paragraphs 30, 31, 32, and 33 relate to negligence in respect to the president, Edward P. Metcalf; but these allegations do not seem to be connected with any specific transactions, and it is not enough as to any particular director to say that Metcalf's unfaithfulness was a large part of the cause of loss, without defining what sums they are charged with negligently losing through trusting matters to Metcalf. These should be stricken out or amended.

Paragraph 37, as we have already said, is too broad and uncertain in its terms, and cannot be applied to any particular loan. It should be amended or stricken out.

Paragraphs 38, 39, and 40 seem to be inserted for the purpose of explaining delay, and of removing any presumption of laches which might arise from the fact that items beyond the period of the statute of limitations are relied upon. As to recent matters, within the period of the statute of limitations, it is not seen that paragraphs 38, 39, and 40 bear upon the liability of the present defendants. The allegations are too indiscriminately made. The questions of laches and limitations, however, may be dealt with more conveniently after the filing by the plaintiff of further particulars as to each defendant.

Concerning the bill generally it may be said that it appears to be drawn with the view of convenience of the plaintiff, and that it charges the defendants too indiscriminately with all the kinds of liability, statutory and at common law, which may be imposed upon directors, and with many transactions with which they are not connected, or, if connected, only in some particular way.

It should not be forgotten that this bill asserts money claims. It asserts that known losses were due to the misfeasance or nonfeasance of these defendants. Each defendant is entitled to know the money claim made upon him, the grounds upon which he is charged in respect to each distinct transaction, in order that he may meet only those charges which affect him, and not be put to the expense of defending general charges with a large part of which he is not concerned, with the risk that, if he does not defend on all points as to all defendants, he may be in default and incur excessive damages.

The bill is not defective in substance, but seems to be subject to the criticism of a defendant that it presents "an indiscriminate charging of various kinds of wrongdoing as applicable equally to all the respondents"; whereas it should be so framed as to enable each defendant to plead or answer, not to the whole bill, but as to the matter chargeable to him only.

In addition to the amendments hereinbefore suggested or indicated as necessary, I am of the opinion, though it may impose some burden on the plaintiff, that each individual director is entitled to have the money claim made upon him stated with the same definiteness and certainty, both as to the amount claimed and to the grounds of liability, as if he were sued alone. This may admit of some grouping of defendants, but will doubtless result in at once relieving many of the defendants from the burden of preparation in respect to many of the transactions set up in the bill.

These statements of particulars should be framed in such form that they may be used before the master as plaintiff's charges against each defendant. It is suggested that in view of the full statement of certain particulars in paragraph 20 of the bill these additional statements may be much condensed, especially by the omission of the full details of many items apparently of renewal, and the substitution therefor of a general statement, with reference, if necessary, to particular items set forth in paragraph 20 of the bill.

Important questions of limitations and laches appear upon the face of the bill.

Whether the allegations that loans actually made were carried on the books at their face value, instead of at a depreciated value, show such concealment as avoids the statute is very doubtful. After the retirement of a director, both the security for the loans and the financial responsibility of the borrower were matters open to inquiry by examiners and subsequent directors. There is no allegation of concealment of what loans were made, or of suppression of the usual sources of information open as to the responsibility of borrowers or the value of assets.

These defenses, however, do not go to the whole bill, which covers many transactions within the period of limitations. They may be best considered after the bill has been amended, and after the filing of the bills of particulars.

In accordance with equity rule 20 (198 Fed. xxiv, 115 C. C. A. xxiv), the plaintiff is ordered to file, within 30 days, a further and better statement of the nature of his claim, and further and better particulars of the matters of his bill in accordance with the foregoing opinion.

Further consideration of motions to dismiss and to strike out is deferred until expiration of time allowed plaintiff by above order.